```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
BANCO CENTRAL DE PARAGUAY, on   :
behalf and as assignee of Banco :
Union S.A.E.C.A. in liquidation :
and Banco Oriental              :
S.A.I.F.E.C.A. in liquidation,  :
                                :
          Plaintiff,            :
                                :     01 Civ. 9649 (JFK)
          -against-             :     OPINION AND ORDER
                                :
PARAGUAY HUMANITARIAN           :
FOUNDATION, INC. f/k/a          :
CQZ HUMANITARIAN FOUNDATION,    :
INC., CQZ HOLDING CORP.,        :
AVIJOS, INC., JOSE M. AVILA,    :
RONALD L. WOLFSON and           :
JORGE RALPH GALLO QUINTERO,     :
                                :
          Principal Defendants, :
                                :
          -and-                 :
                                :
JOHN W. TULAC,                  :
                                :
          Nominal Defendant,    :
-------------------------------X
```

Appearances:

For Plaintiff Banco Central de Paraguay and Third-party
     Defendants Banco Union S.A.E.C.A. and Banco Oriental
     S.A.I.F.E.C.A.

     HUGHES HUBBARD & REED LLP
     One Battery Park Plaza
     New York, New York 10004
     Of Counsel: Daniel H. Weiner, Esq.

For Principal Defendants and Third-party Plaintiffs Paraguayan
     Humanitarian Fdn., CQZ Holding Corp., Avijos, Inc., Jose M.
     Avila, Ronald L. Wolfson and Jorge Ralph Gallo Quintero

     CUBITT & CUBITT
     186 East Huron Ave.
     Bad Axe, Michigan 48413
     Of Counsel: H. Dale Cubitt, Esq.

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN**, United States District Judge:

Plaintiff Banco Central de Paraguay ("Banco Central") moves to dismiss the Principal Defendants' counterclaim in this matter. Third-party defendants Banco Union S.A.E.C.A. in liquidation ("Banco Union") and Banco Oriental S.A.I.F.E.C.A. in liquidation ("Banco Oriental") move to dismiss the Principal Defendants' third party complaint. For the reasons that follow, the motions are granted.

### BACKGROUND

This case involves the diversion of $16 million from two insolvent Paraguayan banks, Banco Union and Banco Oriental, to Citibank trust accounts maintained by Nominal Defendant John W. Tulac and the Principal Defendants. Familiarity with the underlying facts is presumed. See Banco Central de Paraguay v. Paraguayan Humanitarian Fdn., No. 01 Civ. 9649, 2005 WL 53271 at *1-4 (S.D.N.Y. Jan. 7, 2005). In Count One of its amended complaint, Banco Central alleged that the Principal Defendants and Tulac had converted the $16 million. On January 7, 2005, the Court granted Plaintiff's motion for summary judgment on this count as to the Principal Defendants, but not as to Tulac.

A. Counterclaim

The counterclaim alleges that in March 2000, the Principal Defendants reached an agreement with certain Paraguayan officials concerning "project financing" for Paraguay.

(Countercl. ¶ 1). To this end, Banco Union transferred $2 million to a trust account at Citibank in New York maintained by Principal Defendant CQZ Holding Corporation. (Id.). Subsequently, the Paraguayan superintendent of banks, the president of Banco Central and representatives from the liquidated banks allegedly reached an agreement "to seek a form of 100% non-recourse project financing sponsored by the United States." (Id.). In April 2000, allegedly to this end, the two liquidated banks deposited $14 million into a Citibank trust account in New York as an initial equity reserve. (Id.). Principal Defendants further allege that on August 2, 2000, Banco Central committed the sum of $114,152,088 in writing to Principal Defendant CQZ Humanitarian Foundation. (Id.). Project financing was supposedly "approved" in late 2000, but Principal Defendants claim that Banco Central never paid the funds and that they ultimately were blocked. (Id.). According to the Principal Defendants, the CQZ Humanitarian Foundation (later known as Principal Defendant Paraguayan Humanitarian Foundation) ("PHF") could not move forward with the Paraguayan project. (Id.).

Principal Defendants claim that they had "multiple contracts" with the two liquidated banks, and a written contractual commitment from Banco Central for equity in order to arrange the non-recourse project financing. (Id. ¶ 2). The Principal Defendants allege that the liquidated banks "impos[ed]

3

unreasonable and impossible" conditions upon the use of their funds after the transfer, and that Banco Central "reneged" on its commitment and interfered with the contractual relations between PHF and the liquidated banks. (Id. ¶ 4). Defendants contend that they have sustained "compensatory and consequential damages" and that they are "entitled to a humongous and bodacious amount of punitive damages." (Id. ¶ 5, 8).[1]

Banco Central moves to dismiss the counterclaim on three grounds. First, Banco Central argues that it brought suit in its capacity as the assignee of the two banks in liquidation, but that the Principal Defendants impermissibly have asserted claims against Banco Central in its regulatory capacity as the highest banking authority in Paraguay. Second, and related, Banco Central argues that the Foreign Sovereign Immunities Act ("FSIA") bars suit against it in its regulatory capacity. Third, Banco Central argues that the act of state doctrine bars

---

[1] While "humongous" means "very large," the Court never before has encountered a demand for a "bodacious" amount of punitive damages. According to the online Oxford English Dictionary (www.oed.com), in the nineteenth century, "bodacious" meant "complete," "thorough" or "arrant" (e.g. "Air ye turned a bodacious idjit, Skimp?"). Acknowledging that language evolves toward a state of perfection, the O.E.D. lexicographers also list a few late twentieth-century usages: e.g. "excellent" and "fabulous" ("Those bodacious dudes have an excellent time playing games with death."). The final O.E.D. definition is "sexually attractive," but that example will not be used in the main text because the Court prefers that its opinions not appeal to prurient interests. Suffice it to say that the Principal Defendants are looking for some Brobdingnagian punitive damages.

4

the counterclaim. Principal Defendants respond that Banco Central alleged in the amended complaint that it was acting as the assignee of the liquidated banks, not solely as a regulator; thus, it is vulnerable to counterclaims and cannot hide behind the FSIA. Principal Defendants argue that the act of state doctrine is inapplicable because it only applies to public official acts by foreign sovereigns in their own territories, and because the doctrine has a commercial activity exception.

B. Third Party Complaint

The allegations in the Principal Defendants' third party complaint are nearly identical to those in the counterclaim. The only substantive differences are (i) the third party complaint is asserted against Banco Union and Banco Oriental, not Banco Central, and (ii) the third party complaint contains allegations against Citibank. These allegations are now moot because the Principal Defendants discontinued the third party action as to Citibank with prejudice. (Dkt. # 70).

**DISCUSSION**

A. Rule 12(b)(6) Standards

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court's task is to assess the legal feasibility of the claim rather than to weigh the evidence that might be offered in support thereof. See, e.g., Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). Accordingly, the

5

Court accepts the counterclaiming defendants' factual allegations as true and draws all reasonable inferences in their favor. See Masefield AG v. Colonial Oil Industries, No. 05 Civ. 2231(PKL), 2005 WL 2105542 at *2 (S.D.N.Y. Sept. 1, 2005). Plaintiffs' motion will be granted only if it appears beyond doubt that the defendants can prove no set of facts in support of their claim that would entitle them to relief. See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993).

B.  Counterclaim

Generally, under the "opposing party" requirement in Fed. R. Civ. P. 13, when a plaintiff commences an action in one capacity, the defendant may not assert a counterclaim against that plaintiff in a capacity different from that in which the plaintiff sued. See, e.g., Banco Nacional de Cuba v. Chase Manhattan Bank, 658 F.2d 875, 885 (2d Cir. 1981); Blanchard v. Katz, 117 F.R.D. 527, 528 (S.D.N.Y. 1987); 3 Moore's Federal Practice § 1390[2][d] (3d ed. 2005). There are recognized exceptions to the rule, for instance "if the plaintiff has sued in a representative capacity but will benefit individually from any recovery" or "if principles of equity and judicial economy support such a counterclaim." Blanchard, 117 F.R.D. at 528.

In the instant matter, the Principal Defendants contend that Banco Central may be sued in a counterclaim because it stands in the shoes of Banco Union and Banco Oriental. (Pr. Def.

Mem. - Countercl. at 1). Banco Central contends that it brought this action as the banks' assignee and that Rule 13 bars counterclaims against it in its regulatory capacity. There can be little dispute that the Principal Defendants are counterclaiming against Banco Central in its regulatory capacity. The Principal Defendants' allegations pertain to project financing supported by the United States and a written commitment of over $114 million to CQZ Humanitarian Foundation (later PHF). Principal Defendants note that "[a]s the highest banking authority in Paraguay, [Banco Central] had power to enter into a commercial or financial transaction, as alleged in the counterclaim." (Pr. Def. Mem. - Countercl. at 1-2). This is a concession that the allegations in the counterclaim are addressed to Banco Central in its individual capacity as a regulator.

The next issue concerns the capacity in which Banco Central commenced the action. According to the amended complaint: "The Central Bank of Paraguay, acting as the highest banking authority in Paraguay and on behalf and as assignee of Banco Union and Banco Oriental, brings this action to recover the diverted funds." (Am. Compl. ¶ 1). The language elsewhere in the amended complaint is similar (See, e.g., id. ¶¶ 6, 35). Banco Central's characterization of itself as the "highest banking authority in Paraguay" is merely a descriptive phrase that does not refer to the capacity under which it brought suit. As the

7

amended complaint repeatedly makes clear, Banco Central's authority to commence this action derives from its representative capacity as the assignee of Banco Union and Banco Oriental, not from its individual regulatory capacity.

The Court concludes that Banco Central commenced this action in its representative capacity and that Principal Defendants have counterclaimed against Banco Central in its individual regulatory capacity.  Accordingly, even if the Court assumes the truth of the allegations in the counterclaim, dismissal is warranted under the Rule 13 "opposing party" requirement.  The parties have not addressed the exceptions to the general rule noted on page 6, supra, but the Court finds them inapplicable in any event.  There is no indication that Banco Central will benefit in its individual capacity from a recovery of the diverted funds.  Furthermore, judicial economy will not be served by allowing the counterclaim because the Principal Defendants already have filed a third party complaint containing the same allegations as the counterclaim.

Finally, the counterclaim appears to seek a recovery against Banco Union and Banco Oriental, even though the only plaintiff in the action is Banco Central, acting as the assignee of the two banks.  The Principal Defendants make no attempt to persuade the Court that the two banks are "opposing parties" for Rule 13 purposes and thus vulnerable to a counterclaim.  In fact,

Principal Defendants note that one of the reasons they filed the third-party action "was to provide assurance that the two small Banks were, in fact, a party to this action." (Prin. Def. Mem.-Third Party Compl. at 3). The Court therefore finds that Banco Oriental and Banco Union are not opposing parties under Rule 13.

The Court need not address Banco Central's other arguments in support of dismissal. The Principal Defendants have not requested leave to replead the counterclaim under Fed. R. Civ. P. 13(f) and 15(a). Nevertheless, construing the counterclaim in the light most favorable to the Principal Defendants, the Court concludes that leave to replead should be denied as futile. See Albany Ins. Co. v. Esses, 831 F.2d 41, 45 (2d Cir. 1985), abrogated on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989). The counterclaim is dismissed with prejudice.

C. Third Party Complaint

Banco Central argues that the third party complaint fails on Rule 12(b)(6) grounds for various reasons and on Rule 4(m) grounds because the Principal Defendants failed to serve the complaint on Banco Union and Banco Oriental until over two and one-half years after filing it. On the service issue, the Principal Defendants respond that they served a copy of the Complaint on the law firm of Hughes Hubbard & Reed LLP, which represents Banco Central and which subsequently filed the motion

9

to dismiss the third party complaint on behalf of Banco Union and Banco Oriental. The Principal Defendants also claim that the third party summons and complaint "were sent to Paraguay for service on the two smaller Banks individually" but "[t]o date, counsel . . . have not received a proof of service." (Pr. Def. Mem.-Third Party Compl. at 2). The Principal Defendants do not dispute that they waited over two and one-half years after filing the third party complaint to attempt service of Banco Union and Banco Oriental.

Pursuant to Fed. R. Civ. P. 4(m), "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." While Rule 4(m) does not apply to service in a foreign country, the plaintiff does not have an unlimited time to effect service. See Yellowave Corp. v. Mana, No. 00 Civ. 2267(SAS), 2000 WL 1508249 at *1-2 (S.D.N.Y. Oct. 11, 2000). "[W]here service is in a foreign country, the Court uses a flexible due diligence standard to determine whether service of process was timely." Travers Tool Co. v. Southern Overseas Express Line, Inc., 98 Civ. 8464(RO), 2000 WL 194781 at *1 (S.D.N.Y. Feb. 17, 2000); see also

10

Montalbano v Easco Hand Tools, Inc., 766 F.2d 737, 740 (2d Cir. 1985) (applying the Rule 4(m) 120-day service requirement to service in a foreign country because plaintiff "ha[d] not exactly bent over backward to effect service").

The Court finds that the Principal Defendants have not properly served their third party complaint on Banco Union and Banco Oriental. Although the Principal Defendants note that the third-party summons and complaint were sent to Paraguay for personal service, they offer no explanation for the failure of service. Even under the most lenient standards, the Court concludes that Principal Defendants have not been diligent in attempting service on Banco Union and Banco Oriental. The failure to effect service of process on Banco Union and Banco Oriental is a defect under Fed. R. Civ. P. 12(b)(5). As the Principal Defendants have not shown good cause for the failure of service, see Fed. R. Civ. P. 4(m), the Court dismisses the third party complaint without prejudice.

## CONCLUSION

In light of the foregoing, Banco Central's motion to dismiss the Principal Defendant's counterclaim is granted. The counterclaim is dismissed with prejudice. Banco Union and Banco Oriental's motion to dismiss the Principal Defendants' third party complaint is granted. The third party complaint is dismissed without prejudice. The parties are directed to submit

revised proposed judgments no later than November 10, 2005. Counsel shall appear at a status conference on November 22, 2005 at 11:00 a.m. in Courtroom 20C of the United States Courthouse, 500 Pearl Street, New York, New York.

     **SO ORDERED.**

**Dated:**   **New York, New York**
        **October 31, 2005**

                                        */s/ John F. Keenan*
                                        JOHN F. KEENAN
                                      **United States District Judge**